**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FRANK DELLATE,

                              Plaintiff,

         - against -

GREAT NECK UNION FREE SCHOOL
DISTRICT, MICHAEL RUFUS and
ROBERT DEVLIN,

                              Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 09-2567 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>Preliminary Statement</u>

         Plaintiff Frank Dellate commenced this action against Defendants Great Neck Union Free

School District (the "School District"), Michael Rufus and Robert Devlin (collectively,

"Defendants") pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that Defendants violated

Plaintiff's substantive and procedural due process rights under the Fifth and Fourteenth

Amendments and violated Plaintiff's First Amendment rights in the context of his employment.

Plaintiff also claims that Defendants discriminated against him in retaliation for his exercise of

his First Amendment and other constitutional rights.  Presently before the Court are motions to

dismiss brought by (1) Defendant Rufus and (2) Defendants Devlin and the School District,

seeking to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).  For the reasons set

forth below, both motions are GRANTED.[1]

---

[1]      The parties have consented to my jurisdiction for all purposes, including entry of
judgment.  *See* DE 29.

## II. BACKGROUND

### A. Factory Background[2]

Plaintiff Frank Dellate ("Dellate" or "Plaintiff") is employed by Great Neck Union Free School District (the "School District") as a cleaner at Parkville Elementary School. Compl., ¶ 12. At all times relevant to the Complaint, Defendant Robert Devlin ("Devlin") was employed as the Director of Maintenance for the School District. *Id.*, ¶ 8. Defendant Michael Rufus ("Rufus") was the Head Custodian at Parkville Elementary School and Plaintiff's supervisor. *Id.*, ¶¶ 7, 13.

While working under Rufus, Plaintiff complained to the School District about certain actions taken by Rufus, including Rufus's "corruption and alcoholism," "steal[ing] supplies, alter[ing] time cards, steal[ing] overtime and otherwise engag[ing] in theft of services," and that "Rufus becomes very abusive when intoxicated[,]" *Id.*, ¶ 14. Plaintiff alleges that as a result of his "complaints and comments concerning defendant Rufus, plaintiff has been and continues to be subject to harassment and retaliation." *Id.*, ¶ 17. Specifically, on June 13, 2007, Rufus issued an evaluation of Plaintiff's performance which did not contain any rating of "Needs Improvement," and which both Rufus and Plaintiff signed, and a copy of which was given to Plaintiff "and ostensibly placed in [Plaintiff's] personnel file." *Id.*, ¶ 20. In September 2008, Plaintiff learned about the existence of another version of the same evaluation, which had two ratings of "Needs Improvement" and contained comments by Rufus, none of which appeared in

---

[2] The Court accepts the factual allegations set forth in the Complaint as true and draws all reasonable inferences in favor of Plaintiff as the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

the evaluation previously given to Plaintiff. *Id.*, ¶ 21. Plaintiff learned that this second version, which he had never seen, had been placed in his personnel file. *Id.*, ¶ 22.[3] On September 11, 2007, Plaintiff reported the placement of the second version of the evaluation. Thereafter, a meeting was held which was attended by Plaintiff, Jennifer Kirby, a Human Resources Assistant for the District, and John T. Powell, the District Assistant Superintendent for Business. *Id.*, ¶ 23. Plaintiff alleges that "Defendants did nothing to rectify the situation." *Id.*

Plaintiff also alleges that since 2007, he has applied for numerous vacancies as a Security Aide, for which he was not selected, despite being qualified for the position and having the recommendation of Parkville's Principal. *Id.*, ¶ 24. According to the Complaint, Defendants caused complimentary letters of recommendation that Plaintiff had received to be removed from his personnel file. *Id.*, ¶ 25.

In addition, Defendants contacted the Nassau County Civil Service Commission claiming Plaintiff resides outside of Nassau County. According to Plaintiff, other district employees, including Rufus, do not live in Nassau County, but the School District "did nothing in those situations." *Id.*, ¶ 26. Rufus "repeatedly berates plaintiff, talks down to him and falsely criticizes his job performance." *Id.*, ¶ 27. Further, the School District "has continued to acquiesce in, condone and approve the actions complained of" in the Complaint. *Id.*, ¶ 28.

B.     **Summary Of Plaintiff's Claims**

Plaintiff seeks monetary damages and declaratory relief based upon his claims allegations that Defendants, through the actions described above, retaliated against Plaintiff for complaining

---

[3]     Copies of both versions of the evaluation are annexed as Exhibit 2 to the Declaration of Alan E. Wolin, Esq. in Support of Pl.'s Opp'n to Defs.' Mots. to Dismiss [DE 20].

about his supervisor Rufus. First, Plaintiff contends that Defendants are liable under Section 1983 for violations of his substantive and procedural due process rights and his equal protection rights under the Fifth and Fourteenth Amendments. *Id*., ¶ 30. Specifically, Plaintiff maintains that "[t]he actions and omissions of the defendants and their agents" -- including forgery of the performance evaluation form, removal of favorable letters of recommendation from Plaintiff's personnel file, declining to hire Plaintiff as a security aide, and reporting Plaintiff's residency to the Civil Service Commission -- "engaged in under color of state law, constitute a violation of plaintiff's rights to substantive and procedural due process and to equal protection of the law guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States and by New York State law." Compl., ¶ 34. Plaintiff's equal protection claim is based upon the assertion that Defendants contacted the Nassau County Civil Service Commission to report that Plaintiff does not reside in Nassau County, even though they did not do so in regard to other School District employees. *Id*., ¶¶ 26, 34. According to Plaintiff, the actions described in the Complaint "represent official policy, ordinance and custom and were committed by public officials high enough in the relevant municipal entity so that their actions may be said to represent decisions of the District itself." *Id*., ¶ 11.

Second, Plaintiff argues that Defendants are liable under Section 1983 for violations of his First Amendment right to free speech. *Id*., ¶¶ 39-40. Plaintiff maintains that his complaints about Rufus were "non-disruptive, addressed matters of public concern and constituted an exercise of his right to free expression . . . which plaintiff could undertake without fear of reprisal or retaliation." *Id*., ¶¶ 15-16. However, according to Plaintiff, "as a result of [his] complaints

and comments concerning defendant Rufus, [he] has been and continues to be subject to harassment and retaliation." *Id.*, ¶ 17.

Finally, Plaintiff asserts a claim for intentional infliction of emotional distress, alleging that Defendants' conduct was "in bad faith and with the sole intent to harass, annoy and alarm plaintiff" (*id.*, ¶ 18), and resulted in, *inter alia*, prejudicing Plaintiff's career, destroying his reputation, causing him to be publicly ridiculed and humiliated and to endure extreme emotional upset and anxiety and financial injury, and causing him to suffer emotional distress, pain and suffering, economic loss, and emotional and physical illness. *Id.*, ¶¶ 30, 36-37.

C.   **Defendants' Motions To Dismiss**

All of the Defendants, by separate motions brought pursuant to Rule 12(b)(6), seek to dismiss the Complaint in its entirety. Defendant Rufus moves to dismiss on the grounds that Plaintiff "has no protectable property interest in the security aide position" for which he applied, and therefore cannot establish viable claims under the "Takings" Clause of the Fifth Amendment or the Due Process Clause of the Fifth and Fourteenth Amendments. Rufus's Mem. at 3- 5. Second, Rufus argues that Plaintiff has failed to state a claim under the Equal Protection Clause because (1) he has not alleged that he was treated differently from any other similarly situated individual, and (2) he cannot maintain a "class of one" claim as a public employee. *Id.* at 6- 9. Next, Rufus asserts that Plaintiff's First Amendment claim should be dismissed because the speech at issue was not protected since it was made in his capacity as an employee and did not involve a matter of public concern. *Id.* at 10-12.

Defendants Devlin and the School District move to dismiss on substantively similar grounds. *See* Defs.' Mem. at 6-21. Additionally, they assert that the action should be dismissed

as against Devlin because "Plaintiff has not pleaded *any* allegation in his complaint to provide a reason for naming Robert Devlin . . . as a defendant." *Id* at 24 (emphasis in original). Defendants note that Devlin's name is mentioned only once in the entire Complaint and that instance is merely the identification of Devlin as the Director of Maintenance for the School District. Significantly, Defendants state that "[n]one of the complained-of conduct has been attributed to Devlin, and therefore the cause of action against him should be dismissed." *Id*. According to Defendants, Plaintiff has failed to state a claim for intentional infliction of emotional distress because he has not shown (1) "extreme and outrageous conduct" by Defendants; or (2) an intention by Defendants to inflict upon Plaintiff extreme emotional distress; or (3) that Defendants' conduct caused Plaintiff to suffer extreme emotional distress; or (4) that Plaintiff in fact suffered any emotional distress. *Id*. at 21-23.

In support of the motion, Defendants Devlin and the School District submitted the Declaration of Joseph Carbonaro, counsel for Defendants ("Carbonaro Decl.") [DE 19-1], to which five exhibits are annexed [DE 19-1, Exs. A-E]; the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Dist.'s Mem.") [DE 19-5]; and the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Dist.'s Reply Mem.") [DE 21]. Defendant Rufus submitted the Declaration of Maurizio Savoiardo, counsel for Rufus ("Savoiardo Decl.") [DE 21], to which multiple exhibits are attached [DE 33, Ex. A-D]; the Memorandum of Law in Support of Rufus's Motion to Dismiss ("Rufus's Mem.") [DE 37]; and the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Rufus's Reply Mem.") [DE 36]. In opposition, Plaintiff submitted the Declaration of Alan E. Wolin, counsel for Plaintiff ("Wolin Decl.") [DE 34], to which two exhibits are annexed [DE 34, Exs. 1-

2], and a Memorandum of Law in Opposition to Defendants' respective Motions to Dismiss

("Pl.'s Mem.") [DE 35].  The Court has carefully considered all of the parties' submissions.

### III.    LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the plaintiff.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  The plaintiff

must satisfy "a flexible plausibility standard." *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007),

rev'd on other grounds *sub nom*. *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

563, 127 S. Ct. 1955, 167 L. Ed. 2d. 929 (2007).  The Court, therefore, does not require

"heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face." *Id*. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v.*

*Iqbal*, -- U.S. --, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009), setting forth a two-pronged

approach for courts deciding a motion to dismiss.  District courts are to first "identify[] pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth."

*Iqbal*, 129 S. Ct. at 1950.  Though "legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

Defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## IV.    <u>Additional Materials Submitted By Plaintiff</u>

Both Defendants and Plaintiff have annexed as an exhibit to their respective papers the transcript of Plaintiff's testimony at the hearing held on January 16, 2009 pursuant to New York General Municipal Law § 50-h (the "50-h hearing").  *See* Carbonaro Decl., Ex. E; Wolin Decl., Ex. 1.  Also, all parties cite the transcript in support of their respective arguments.  *See, e.g.*, Pl.'s Mem. at 7; Dist.'s Mem. at 5 n.2, 12 n.6, p. 16, n.10, 22-23; Dist.'s Reply Mem. at 13; Rufus's Reply Mem. at 9.  Although the transcript was not annexed as an exhibit to the Complaint, Plaintiff asserts that the transcript should be considered here "as part of the pleadings."  Wolin Decl., ¶ 8 (citing cases).  In the Complaint, Plaintiff asserts that "on October 17, 2008, plaintiff caused a Notice of Claim pursuant to General Municipal Law § 50-e to be served[, and] [m]ore than thirty (30) days have elapsed since plaintiff served the Notice of Claim and the claim remains open and unpaid."  Compl., ¶¶ 49-50.  Because the hearing had not yet occurred at the time this action was commenced, the hearing transcript could not have been included as an exhibit or incorporated into the Complaint.  The Court may nonetheless consider such transcript here, without converting the motions to dismiss into motions for summary judgment, because "the record was available to and clearly known of" by all parties to this action.  *See Bennett v. Tucker*, 95 Civ. 8029, 1996 WL 288202, at *1 n.3 (S.D.N.Y. May 30, 1996) (relying upon record of prison hearing annexed as an exhibit to defendant's papers in support of

motion to dismiss, even though transcript had not been included in the complaint, because the "record was 'available to and clearly known by the plaintiff'") (quoting *Westwood v. Cohen*, 838 F. Supp. 126, 130 (S.D.N.Y. 1993)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). In light of the fact that, at the time the motions to dismiss were filed, the transcript of the 50-h hearing was available and known to all parties, and that both parties here are relying upon portions of the transcript to support their respective arguments, the transcript may be considered by the Court. Plaintiff also annexes the two versions of his performance evaluation dated May 29, 2007. *See* Wolin Decl., Ex. 2. In light of Plaintiff's allegations in the Complaint that Rufus issued an evaluation of Plaintiff's performance which was later changed to lower Plaintiff's ratings and was subsequently placed in his personnel file (Compl., ¶¶ 20-24), and that Defendants did not act to "rectify the situation[,]" (*id*., ¶ 23), the Court finds that the evaluations are incorporated by reference into the Complaint and may, therefore, be considered here.[4] *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered [on a motion to dismiss].") (Citations omitted).

**V.      Discussion**

**A.      Section 1983 Claims**

Plaintiff asserts four claims pursuant to Section 1983: (1) substantive due process claims under the Fifth and Fourteenth Amendments; (2) procedural due process claims under the Fifth and Fourteenth Amendments; (3) equal protection claims under the Fourteenth Amendment; and

---

[4]      The Court notes that none of the Defendants expressed any objection to Plaintiff's inclusion of the evaluations as exhibits in the opposition papers.

(4) claims for violation of the First Amendment right to free speech. All of Plaintiff's claims arise from the same set of events as alleged in the Complaint -- that Defendants's conduct, including forging the negative performance evaluation form, removing favorable letters of recommendation from Plaintiff's personnel file, and reporting Plaintiff's residency to the Nassau County Civil Service Commission, were undertaken in retaliation for Plaintiff's complaints about his supervisor Rufus and thereby violated Plaintiff's civil rights. Plaintiff contends that such conduct resulted in his rejection from the security positions for which he applied.

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere[,]" namely under the United States Constitution and certain federal statutes. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under state law that deprived Plaintiff of a right secured by the Constitution of the United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). To bring a successful claim under Section 1983, a plaintiff must show in the first instance that: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 235 (2d Cir. 1998); *Quinn v. Nassau County Police Dep't*,

53 F.Supp. 2d 347, 353 (E.D.N.Y. 1999). Here, there is no dispute that, in connection with the facts described in the Complaint (which the Court assumes to be true for purposes of deciding the motions to dismiss), Defendants were acting under color of state law. Thus, the issue for the Court is whether Defendants' conduct deprived Plaintiff of the rights he asserts under the United States Constitution.[5] The Court will address each of Plaintiff's Section 1983 claims in turn.

### 1. *Fifth Amendment Claims*

Although Plaintiff brings claims pursuant to both the Fifth and Fourteenth Amendments, Plaintiff fails to state a claim for relief under the Fifth Amendment. Plaintiff's reliance upon the Fifth Amendment as the basis for his due process claim is misplaced because the Fifth Amendment regulates due process violations by federal actors only. *See Burgess v. County of Rensselaer*, 1:03-CV-652, 2006 WL 3729750, at * 5 (N.D.N.Y. Dec. 18, 2006); citing *Sylla v. City of New York*, 04-cv-5692, 2005 WL 3336460, at * 2 (E.D.N.Y. Dec. 8, 2005) ("The Fifth Amendment is applicable only to the federal government."); citing *Public Utilities Comm'n of Dist. of Columbia v. Pollak*, 343 U.S. 451, 461 (1952). In the Complaint, Plaintiff alleges violations against the School District and two School District employees -- all state actors to whom the Fifth Amendment is applicable only through the Fourteenth Amendment. *See Soundview Assocs. v. Town of Riverhead*, -- F. Supp. 2d --, 2010 WL 2884877, at *8 (E.D.N.Y. Jul. 14, 2010). Accordingly, the Court construes Plaintiff's claims as brought under the Fourteenth Amendment, and Plaintiff's Fifth Amendment claims are hereby dismissed. *See id.*;

---

[5]     The Complaint states that Rufus and Devlin are "being sued herein individually and in [their] official capacit[ies]." Compl., ¶¶ 7, 8. However, Plaintiff does not assert any claims against Rufus or Devlin outside of their employment for the School District, and Plaintiff does not make any such argument in his opposition papers. Accordingly, the Court treats Plaintiff's claims as against Rufus and Devlin in their official capacities only.

citing *Kramer v. New York City Bd. of Educ.*, No. 09-CV-1167, 2010 WL 2010462, at *1 (E.D.N.Y. May 20, 2010) ("Plaintiff's reliance on the Fifth Amendment is construed as an invocation of the Fourteenth Amendment, because the latter applies to due process violations or takings by state rather than federal actors."); *Pabon v. New York City Transit Auth.*, No. 06-CV-2859, 2010 WL 1371048, at *8 (E.D.N.Y. Mar. 31, 2010) ("The Fifth Amendment's civil due process component is inapplicable here . . . and is otherwise made redundant by his Fourteenth Amendment claim."); *see also Burgess*, 2006 WL 3729750, at * 5 (*sua sponte* dismissing Fifth Amendment due process claims against municipal defendants).[6]

### 2.    *Due Process Claims*

Plaintiff alleges that Defendants' conduct, including forging the negative performance evaluation form, removing favorable letters of recommendation from Plaintiff's personnel file, Rufus's treatment of Plaintiff, and the School District's decisions not to hire Plaintiff for the security aide positions, "constitute a violation of [his] rights to substantive and procedural due process . . . guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States and by New York State law." Compl., ¶¶ 22-27. The Fourteenth Amendment

---

[6]    Defendants argue that Plaintiff has failed to state a viable claim under the Takings Clause of the Fifth Amendment because Plaintiff has not established the requisite "protectable property interest in his prospective employment in the position of a security aide with the District." Rufus's Mem. at 5; *see also* Dist.'s Mem. at 24 ("Plaintiff had no protectable property interest in the positions he interviewed for."). The Court does not read the Complaint as stating a claim under the Takings Clause of the Fifth Amendment and Plaintiff has not addressed this issue in his opposition to the motions to dismiss. Even if a Takings claim could be read into the Complaint, however, such claim would necessarily be dismissed because, as discussed below, Plaintiff has not shown that he had a protectable property interest in the position, and therefore has not established a requisite element of a Takings claim. *See Buffalo Teachers Fed'n v. Tobe*, 446 F. Supp. 2d 134, 152 (W.D.N.Y. 2005) ("To establish a violation of the Takings Clause, Plaintiffs must first demonstrate that they possess a property interest that is protected by the constitution.") (citing, *inter alia*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000-01 (1984)).

provides, in pertinent part, that no State shall"deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. Thus, to establish claims for violations of procedural and substantive due process rights, a plaintiff must first show that he enjoyed protected property and liberty interests, respectively. *See Dallara v. Sinnott,* 1:98-CV-3472, 2006 WL 1582159, at *4 (E.D.N.Y. Jun. 5, 2006) ("A plaintiff alleging violation of due process under the Fourteenth Amendment must first show that he enjoyed a protected interest."); citing *Taylor v. Rodriguez,* 238 F.3d 188, 191 (2d Cir. 2001); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (Plaintiff must show that he was deprived of a protected property or liberty interest.). The Court will address each of Plaintiff's due process claims in turn.

### a. Procedural Due Process Claim

Defendants move to dismiss Plaintiff's due process claims on the grounds that Plaintiff has no protectable property interest in the security aide position for which he applied, and therefore has not stated a viable claim for either substantive or procedural due process violations. *See* Rufus's Mem. at 3; Dist.'s Mem. at 10. In opposition, Plaintiff argues that a "property interest may attach to specific benefits." Pl.'s Mem. at 10. At the outset, the Court notes that Plaintiff was not fired from his current job as a cleaner and has not been demoted in any way. Rather, Plaintiff's claims arise from the School District's decision not to hire him for a different job as a security aide.

To determine whether Plaintiff has stated a viable claim for violation of his procedural due process rights, the Court first looks to whether Plaintiff has a protected property interest in the security positions for which he applied. *See Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 432 (N.D.N.Y. 2005) ("the initial inquiry should always be whether a property interest or

right exists").  The Due Process Clause does not itself create the property interests that it protects; rather, "[s]uch property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *McMenemy v. City of Rochester*, 241 F. 3d 279, 286 (2d Cir. 2001) (quoting *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995); (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  The Supreme Court has explained that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577. Thus, in order to state a viable procedural due process claim, Plaintiff must show that, under New York State law, he had a protectable property interest in obtaining one of the security aide positions for which he applied.

Under the law as applied in the Second Circuit, it is well settled that "a job applicant does not have a protected interest in a prospective employment position."  *Dallara*, 2006 WL 1582159, at *4; citing *Ruslander v. City of Buffalo*, 02-CV-0021E, 2003 WL 23350117, at *2 (W.D.N.Y. Aug. 22, 2003); *Jonhson v. New York City Police Dep't*, 25 Fed. Appx. 32, 33, 2001 WL 1574211, at *1 (2d Cir. Dec. 4, 2001) (affirming dismissal of due process claims because plaintiff "cannot claim a property interest in a prospective job.").  Furthermore, the New York Court of Appeals has stated that "a civil servant seeking a promotion 'does not possess any mandated right to appointment or any other legally protectible interest.'"  *McMenemy*, 241 F. 3d at 286 (quoting *Cassidy v. Mun. Civ. Serv. Comm'n*, 37 N.Y.2d 526, 529, 375 N.Y.S.2d 300, 303 (1975)).  Plaintiff relies upon *Perry v. Sinderman*, 408 U.S. 593 (1972) in support of his position that he has a protectable property interest.  *See* Pl.'s Mem. at 12.  In *Perry*, the Supreme Court

stated that for purposes of procedural due process protection, property interests include "a broad range of interests that are secured by 'existing rules or understandings.' A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Perry*, 408 U.S. at 601 (quoting *Roth*, 408 U.S. at 577) (additional citation omitted)). In the Complaint, however, Plaintiff alleges that since June 2007, he "has applied for numerous vacancies as a Security Aide[, and that] despite being qualified and despite the recommendation of Parkville's Principal, plaintiff was not selected." Compl., ¶ 24. Plaintiff does not assert that there are any rules or understandings that support his claim of entitlement to the security aide position, and the Court concludes that *Perry* does not support the relief sought by Plaintiff. *See Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) (affirming dismissal of due process claims where plaintiff could not "point to [any] District 'policies and practices' sufficient to create an implied understanding" under the state education law that she was entitled to continued employment as an assistant principal) (quoting and discussing *Perry*, 408 U.S. at 603).

To the extent Plaintiff asserts that he has a protectable property interest in the security aide position because he passed the Civil Service exam, New York law is to the contrary. The New York Court of Appeals has stated that "a person successfully passing a competitive Civil Service examination does *not* acquire any legally protectable interest in an appointment to the position for which the examination was given . . . nor thereby gain a vested right in an appointment to the position." *Andriola v. Ortiz,* 82 N.Y.2d 320, 324, 624 N.E.2d 667, 669, 604 N.Y.S.2d 530, 532 (1993) (emphasis in original) (citations and internal quotation marks omitted). Accordingly, Plaintiff does not have a legitimate claim of entitlement to the security aide

positions which he sought, either by virtue of the fact that he applied for the positions or that he passed the requisite civil service test.

In his papers in opposition to the motion to dismiss, Plaintiff asserts a procedural due process claim with respect to the negative performance evaluation which was placed in his personnel file. Specifically, Plaintiff maintains the following:

> Discovery will reveal that the District has established a policy and procedure with respect to performance evaluations. That policy and procedure will reveal that a supervisor issues a periodic written evaluation, which is signed off on by all concerned. That evaluation is then placed in the employee's personnel file. It is not part of the process for a supervisor to allegedly alter that evaluation and place that altered evaluation in the employee's file, without notifying the employee, as plaintiff alleges happened herein. The supervisor's actions, as alleged herein, deprived plaintiff of any meaningful opportunity to challenge the evaluation, which would have been his right. It resulted in a total subversion of the process that plaintiff had a right to expect and which was due to him. As such, plaintiff states a claim for deprivation of procedural due process.

Pl.'s Mem. at 12. The Court understands Plaintiff to be arguing that the School District had policies and procedures with respect to the handling of performance evaluations, but such policies were not followed here, resulting in the allegedly forged evaluation appearing in Plaintiff's file. First, the Court notes that Plaintiff does not state what, exactly, Plaintiff's policies are with regard to performance evaluations, which rules were not followed, or how such divergence violated Plaintiff's rights. The standard on a motion to dismiss is not speculation as to what discovery will reveal, but rather, the sufficiency of the allegations set forth in the Complaint. The Complaint does not make any specific allegation with respect to the School District's policies regarding performance evaluations, and such conclusory statements are not entitled to the assumption of truth on a motion to dismiss. *See Ashcroft v. Iqbal*, -- U.S. --, 129

S. Ct. 1937, 1950 (in analyzing a motion to dismiss, the court begins "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").

Moreover, to the extent the Plaintiff is arguing that the School District's failure to follow its own policies led to the forged performance evaluation -- which, in turn, caused him to be passed over for the security aide position -- Plaintiff still has not a stated a claim for substantive due process violations because he does not have a protectable property interest in such position. *See McMenemy*, 241 F. 3d at 287 (because [plaintiff] had no legitimate claim of entitlement to -- and therefore no property interest in -- the position to which he aspired, the procedures used to fill that job are immaterial to his due process claim"). In the absence of a state-law entitlement to this position, Plaintiff's "abstract" concerns do not constitute a property interest. *See Donato*, 96 F.3d at 630 (citing *Roth*, 408 U.S. at 578).

Alternatively, there are circumstances under which denial of the opportunity to be heard may be a denial of one's procedural due process rights. For example, a public employee may bring a challenge to the competitiveness of a civil service exam and/or the denial of a promotion under Article 78 of the New York Civil Practice Law and Rules. Here, however, Plaintiff was not terminated nor was his current position as a cleaner affected in any way. Moreover, to the extent Plaintiff argues that he was denied the right to review and/or challenge the contents of the subsequent performance evaluation, such assertion is belied by the record. During the 50-h hearing, Plaintiff was asked whether, since the meeting with School District representatives regarding his performance evaluation, he had requested an opportunity to review the contents of his personnel file. Plaintiff answered that he had not. *See* Wolin Decl., Ex. A at 10. Plaintiff was then asked if he knew "what the mechanism would be to review your personnel file," to

which Plaintiff responded "yes."  *Id*.  Plaintiff was next asked "[s]ince the occurrence that you allege in this complaint of June 2007, since that time you haven't gone through that procedure to review your personnel file?", to which Plaintiff answered "no."  *Id*. at 10-11.  Thus, Plaintiff was aware of procedures he could have taken with regard to the events alleged in the Complaint, including the forging of the performance evaluation and removal of positive letters of recommendation.  Plaintiff, however, chose not to avail himself of such procedures and cannot now be permitted to bring a due process claim on the same grounds.

In light of the Court's conclusion that Plaintiff had no legitimate claim of entitlement to, and therefore no property interest in, the security aide position to which he aspired, Plaintiff's claim for procedural due process violations must be dismissed.

### b.      *Substantive Due Process Claim*

Defendants move to dismiss the substantive due process claim on the grounds that Plaintiff has not alleged "brutal harm, shocking to the conscience, inflicted upon Plaintiff by Defendants[,]" and such is a requisite element of a substantive due process claim.  *See* Dist.'s Mem. at 17.  In opposition, Plaintiff argues that "[t]he facts, as alleged, reveal a pattern of activity by defendants which can only be construed as arbitrary, conscious shocking or oppressive[, and] [t]herefore, plaintiff states a cause of action for violation of substantive due process. . . ."  *See* Pl.'s Mem. at 13-14.

Substantive due process is characterized "as imposing limits on what a state may do regardless of what procedural protection is provided."  *Cohn*, 363 F. Supp. 2d at 434. Substantive due process claims must allege conduct that is so extreme or egregious that it

"can be fairly viewed as so 'brutal' and 'offensive to human dignity' that it shocks the conscience." *Id.*; quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 n.6 (2d Cir. 1973) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). The Second Circuit has explained that "substantive due process protects against governmental action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted). Moreover, substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (citation omitted).

To state a claim for substantive due process violations, a plaintiff must first establish that he has a protected liberty interest in the exercise of such purported right. *See Gordon v. Woodbourne Corr. Facility*, 481 F. Supp. 2d 263, 271 (S.D.N.Y. 2007) (citations omitted). In the Complaint, Plaintiff alleges that as a result of Defendants' conduct, Plaintiff "has had his career prejudiced; has been held up to public ridicule . . . been publicly humiliated; publicly shamed been substantially caused to suffer financial injury; has been publicly degraded; [and] has had his professional reputation publicly destroyed. . . . ." Compl., ¶ 30. The Court understands Plaintiff to be alleging that the negative performance evaluation as well as the removal of the positive letters from his personnel file, and Rufus's berating and false criticisms of his job performance, resulted in harm to his reputation, thereby depriving him of his constitutional substantive due process right.

"Damage to an employee's reputation brought about by an employer's stigmatizing comments standing alone, however, is a matter properly vindicated under state tort law, and does not rise to a deprivation of a constitutional right." *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999) (citing *Paul v. Davis*, 424 U.S. 693, 701, 712 (1976); *Donato*, 96 F.3d at 630). In order to establish deprivation of a liberty interest based upon defamation, Plaintiff must show "stigma plus," which is typically defined as "a loss of reputation 'coupled with some other tangible element.'" *Morris*, 196 F.3d at 114 (quoting *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994)). In the case of a government employee, a federal cause of action for deprivation of a liberty interest arises only when the alleged defamation occurs in the course of some negative alteration of the employee's status, such as dismissal or refusal to rehire. *See Morris*, 196 F.3d at 114 (citing *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)); *Verri v. Nanna*, 973 F. Supp. 773, 799 (S.D.N.Y. 1997) ("The 'plus' is not only significant damage to a person's employment opportunities, but dismissal from a government job or deprivation of some other legal right or status.") (Citation omitted). Furthermore, the defamation must have occurred close in time to the dismissal or other negative employment action for an employee to succeed on a claim of deprivation of a liberty interest. *Id*. (citing *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994)).

Here, Plaintiff has not met the "stigma-plus" standard. The Complaint contains only conclusory statements that Plaintiff has suffered prejudice and damage to his reputation. Plaintiff has not offered any specific examples of such damage. Moreover, Plaintiff does not allege that there has been any alteration of his employment status, as required under the applicable case law. Rather, the gravamen of Plaintiff's procedural due process claim is that the damage to his

reputation has resulted in his not being hired for the security aide positions, which as detailed above, does not constitute a viable due process claim. Accordingly, Plaintiff's claim for substantive due process violations is dismissed.

### 3. *Equal Protection Claim*

In the Complaint, Plaintiff alleges that "Defendants have contacted the Nassau County Civil Service Commission claiming that plaintiff resides outside of Nassau County. Other employees, including defendant Rufus, have not lived in Nassau County. The District did nothing in those situations." Compl., ¶ 26. Defendants move to dismiss Plaintiff's equal protection claim on the grounds that Plaintiff has not pleaded "that those employees are 'similarly situated in all material respects' to himself[, and that] the class-of-one theory of equal protection does not apply in the public employment context." Dist.'s Mem. at 20-21; Rufus's Mem. at 6-9.

The Equal Protection Clause requires that the government treat all similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). In analyzing an equal protection claim, courts first determine what standard of review to apply. The "strict scrutiny standard" is applied if Plaintiff alleges he was treated differently because of membership in a suspect class or because he exercised a fundamental right. The less rigorous "rational relationship" standard requires that Plaintiff's treatment was rationally related to a legitimate governmental interest. *See Cohn*, 363 F. Supp. 2d at 438. Plaintiff does not allege that he was treated differently based upon membership in a suspect class and it is well

established that "public employment is not a fundamental right." *Dallara*, 2006 WL 1582159, at

* 2. The Court therefore applies the "rational relationship" standard here.[7]

To state an equal protection claim, a plaintiff must allege that (1) he was selectively

adversely treated in comparison with other similarly situated persons; and (2) "such selective

treatment was based upon impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted). Here, the

Complaint vaguely asserts that Plaintiff was treated differently from other School District

employees who did not live in Nassau County, in that the Defendants contacted the Nassau

County Civil Service Commission regarding Plaintiff's residency but did nothing in connection

with other employees living outside the County. Compl., ¶ 26. Other than Rufus, Plaintiff does

not identify any other employee who did not live in Nassau County and who was not reported to

the Commission. Moreover, Rufus, as a Supervisor, was, by definition, not "similarly situated"

to Plaintiff. *See Morris v. DaPolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004) ("To be

'similarly situated,' the persons [being] compare[d] . . . must be 'similarly situated in all material

aspects' . . . . the test is whether a prudent person would think them roughly equivalent.") (citing,

*inter alia*, *Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor*, 51 F. Supp. 2d 255, 264 (E.D.N.Y.

1999)).[8]

---

[7]      In his opposition brief, Plaintiff likewise advocates use of the "rational relationship"
standard. Pl.'s Mem. at 15.

[8]      Additionally, the Complaint does not contain a single allegation from which the Court
could infer that the Civil Service Commission was contacted *because* Plaintiff exercised his First
Amendment right in complaining about Rufus's treatment of him. *See Sebast v. Mahan*, 09-cv-
98, 2009 WL 2256948, at *2 (N.D.N.Y. Jul. 28, 2009). The Supreme Court has instructed that

Because Plaintiff has not alleged membership in a protected class and has not been denied a fundamental right, Plaintiff's claim is a "class-of-one" Equal Protection claim. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Second Circuit has stated that to adequately plead a "class-of-one" claim, a plaintiff must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cohn*, 363 F. Supp. 2d at 438 (quoting *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002) (quoting *Olech*, 528 U.S. at 564)); *see also DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003) (permitting a "class of one" claim to survive a motion to dismiss where the complaint only generally alleged that other individuals were treated differently). In general, a claim under a "class-of-one" theory may survive a motion to dismiss where the complaint only generally alleges that other individuals were treated differently. *See DeMuria v. Hawkes*, 328, F.3d 704, 707 (2d Cir. 2003). However, as detailed above, the only person to whom Plaintiff compares himself is his supervisor Rufus and, in light of the fact that Plaintiff and Rufus had different jobs, they cannot be considered "similarly situated." Even if the Court were to find that Plaintiff had adequately pleaded the "similarly situated" element, the "class-of-one" claim must still fail because Defendant had a rational basis for the conduct at issue. The record demonstrates that the

---

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Here, the Complaint contains only conclusory statements that Plaintiff's equal protection rights were violated, and such allegations do not permit the Court to draw such reasonable inference.

School District had a legitimate governmental interest in contacting the Commission[9] regarding

Plaintiff's residency, because Plaintiff, by his own admission in both the Complaint and at the

50-h hearing, is a resident of Brooklyn, and has been for the entire time period relevant to this

action. *See* Compl., ¶ 5 ("Plaintiff, Frank Dellate, at all relevant times, was and still is a resident

of the State of New York, County of Kings, to wit: 2301 Benson Avenue, Brooklyn."); Wolin

Decl., Ex. A at 4, 50-60.[10]

In light of the Court's determination that Plaintiff has failed to state a cause of action for a

violation of his procedural due process rights, substantive process rights, or equal protection

rights, Plaintiff's first cause of action is dismissed.

### 4.    *First Amendment Claim*

Plaintiff alleges that certain actions have been taken against him in the workplace as a

result of his voicing complaints about his supervisor, Defendant Rufus. Compl., ¶¶ 14-27.

Defendants argue that Plaintiff's First Amendment claim should be dismissed "because the

speech alleged by plaintiff in his complaint was only made in his capacity as an employee, not as

a citizen, and it did not involve a matter of public concern." Rufus's Mem. at 10; *see also* Dist.'s

Mem. at 6-9.

---

[9]    Because, for purposes of deciding Defendants' motions to dismiss, the Court assumes the truth of the facts alleged in the Complaint, the Court assumes that a School District representative did in fact contact the Commission as alleged.

[10]    In the Reply Memorandum (p.3), Defendant Rufus explains that the security aide position for which Plaintiff applied was a competitive civil service position and, under Nassau County law (passed pursuant to the authority granted by New York State), such office must be filled "only by a person who is a citizen and bona fide resident and dweller of the County for at least one year." Nassau County Admin. Code § 13-1.0.

To establish a First Amendment retaliation claim, a plaintiff must show: (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action. *Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008) (citation omitted). Whether a public employee engaged in constitutionally protected speech is determined by "whether the employee spoke as a citizen on a matter of public concern." *Ricioppo v. County of Suffolk*, 04-3630, 2009 WL 577727, at *8 (E.D.N.Y. Mar. 4, 2009), *aff'd* 353 Fed. Appx. 656 (2d Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. If, however, the answer is yes, then the court must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id*.; *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

Courts have long recognized that public employers "have heightened interests in controlling speech made by an employee in his or her professional capacity," and so the Supreme Court has ruled that "a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes . . . and employer retaliation for such speech does not justify the 'displacement of managerial discretion by judicial supervision.'" *Ruotolo*, 514 F.3d at 189 (quoting *Garcetti*, 547 U.S. at 418). Moreover, although the First Amendment protects employees' speech in certain circumstances, it does not permit employees to "constitutionalize the employee grievance." *Ricioppo*, 2009 WL 577727, at *9 (quoting *Garcetti*, 547 U.S. at 418). "Although a public employee 'does not relinquish First Amendment rights to comment on

matters of public interest by virtue of government employment,' these rights are not absolute, because the public employer has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services." *Ricioppo*, 2009 WL 577727, at *9 (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)); *see also Garcetti*, 547 U.S. at 418 ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.").

In *Garcetti*, "the Supreme Court clarified that the threshhold question in First Amendment public speech cases is two-fold. First, in determining whether the speech in question is protected, the district court must decide whether the plaintiff was speaking 'as a citizen. . . . Second, if the court determines that the plaintiff was speaking as a citizen, it must then conduct the analysis set forth in *Connick* [*v. Meyers*, 461 U.S. 138, 154 (1983)] and establish whether, ''viewing the record as a whole and based on the content, context, and form of a given statement, the plaintiff's speech was made as a citizen upon matters of public concern.'" *Ricioppo*, 2009 WL 577727, at *9 (quoting *Mulcahey v. Mulrenan*, 06 Civ.4371, 2008 WL 110949, at *4 (S.D.N.Y. 2008)). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Ruotolo*, 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)); *see also Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citing *Connick*, 461 U.S. at 148 n.7). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis*, 165 F.3d at 163-64).

Here, Plaintiff's speech concerned (1) his treatment by his supervisor, Rufus, and (2) the contents of his personnel folder. Regarding his supervisor, Plaintiff alleges that Rufus is "corrupt[]" and an alcoholic, and that he "steals supplies, alters time cards, steals overtime and otherwise engages in theft of services," and "becomes very abusive when intoxicated." Compl., ¶ 14. Plaintiff further asserts that "Defendant Rufus repeatedly berates plaintiff, talks down to him and falsely criticizes his job performance." *Id.*, ¶ 27. With the above-stated principles in mind, the Court finds that the speech described by Plaintiff in the Complaint represents Plaintiff's personal grievances regarding his treatment by his supervisor. Such expression may have pertained to Plaintiff's attempts to redress his personal grievances, but there are no allegations whatsoever to show that Plaintiff engaged in that speech to advance a broader public purpose. *See Ruotolo*, 514 F.3d at 189; *Lewis*, 165 F.3d at 163-64.

In his opposition papers, Plaintiff asserts that he spoke as a private citizen, that his "speech concerned general problems that he perceived and was not limited to instances affecting only him[,]" and that such "speech, about what he perceived to be the improper conduct of his supervisor[,] was not clearly one of his job duties." Pl.'s Mem. at 8-9. However, courts have frequently stated that "[a] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ruotolo*, 514 F.3d at 189 (quoting *Boyce v. Andrew*,, 510 F.3d 1333, 1343 (11th Cir. 2007) (additional citation omitted). Furthermore, "[a] generalized public interest in the fair or proper treatment of public employees is not enough." *Ruotolo*, 514 F.3d at 189-90 ("retaliation against the airing of generally personal grievances is not brought within the protection of the first amendment by the mere fact that one or two of [a public employee's] comments could be

construed broadly to implicate matters of public concern") (quoting *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (rejecting claim that speech impugning hospital director's skills as a doctor, teacher and an administrator is a matter of public concern)); *Piscottano v. Murphy*, 511 F.3d 247, 270 (2d Cir.2007) ("public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication") (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)). Accordingly, where, as here, Plaintiff's speech is "calculated to redress personal grievances[,]" Plaintiff cannot state a First Amendment retaliation claim simply by adding conclusory statements regarding his intentions in making that speech. Based upon the "content, form and context" of Plaintiff's speech, it is evident that there was no broader public purpose involved in Plaintiff's complaints about his supervisor. *See Ricioppo*, 2009 WL 577727, at *14 (that employee's speech "may be of some interest to some members of the public . . . does not make it a matter of public concern for First Amendment purposes") (citations omitted); (*Rafiy v. Nassau County Med. Ctr.*, 218 F. Supp. 295, 306-07 (E.D.N.Y. 2002) ( "where the speech uttered by the employee relates simply to a disagreement or a criticism of the employer as boss, it is unlikely the speech will be protected"); *see also Sebast*, 2009 WL 2256949, at *2 ("when an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior") (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)).

In light of the fact that Plaintiff's speech pertains to personal grievances involving dissatisfaction with his supervisor, and that "the relief he seeks is for himself alone," Plaintiff's speech is not a matter of public concern and is not protected under the First Amendment. Such speech cannot form the basis of Plaintiff's First Amendment retaliation claim. Consequently, the second cause of action is dismissed.

### B.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress

In the third cause of action, Plaintiff alleges that "[t]he actions of defendants and their agents, servants and employees were intended to cause plaintiff, and any reasonable person in his stead, extreme emotional distress and did so cause plaintiff extreme emotional distress." Compl., ¶ 46. Defendants move to dismiss Plaintiff's intentional infliction of emotional distress claim on the grounds that Plaintiff has failed to sufficiently plead the four elements of such a claim and that public policy bars the assertion of such claims against a governmental entity. *See* Dist.'s Mem. at 21-23; Dist.'s Reply Mem. at 12-14.

Under New York law, the tort of intentional infliction of emotional distress has four elements:  (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *D'angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007) (quoting *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993)). New York States's highest court has made clear that the "requirements of the rule are rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 121, 596 N.Y.S.2d at 353 (citation omitted). Liability is "found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Amer. Home Prods. Corp.*, 461 N.Y.S.2d 232, 234, 236, 461 N.Y.S.2d 293, 303 (N.Y. 1983) (plaintiff's allegations that "the manner of his termination was deliberately and viciously insulting, was designed to and did embarrass and humiliate plaintiff and was intended to and did cause plaintiff severe mental and emotional distress" failed to state a claim); (quoting Restatement [Second] of Torts § 46, comment d)); *D'angelo-Fenton*, 470 F. Supp. 2d at 399-400 (citations omitted).

Plaintiff's allegation that Defendants forged a negative performance evaluation, removed positive letters from Plaintiff's file, and declined to hire Plaintiff as a security aide, do not, as a matter of law, constitute such extreme and outrageous conduct as to support a claim for intentional infliction of emotional distress. With regard to these claims, the Court notes that Plaintiff has not alleged any specific conduct by either individual Defendant, and has not named any other individuals except for the two people with whom he met following discovery of the forged evaluation (though with respect to those individuals, Plaintiff alleges only that they took no action regarding the letter; he does not allege that either person intentionally inflicted emotional distress upon him). *See Stevens v. State of New York*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) (dismissing intentional infliction of emotional distress claim brought by former employee where plaintiff had "not alleged any specific conduct by any of the individual defendants . . . that would even come close to supporting such a claim"). Plaintiff's claim regarding Rufus's abusive treatment is likewise insufficient to state such a claim. *See id*. (supervisor's "racially insensitive remarks to [plaintiff] do not give rise to a claim for IIED")

(citing *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 00 Civ. 5433, 2001 WL 180055, at *2
(S.D.N.Y. Feb. 22, 2001) ("Acts which merely constitute harassment, disrespectful or disparate
treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities
fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous."));
*Majer v. Metro. Transp. Auth.*, 90 Civ. 4608, 1990 U.S. Dist. LEXIS 16971, at *17 (S.D.N.Y.
Dec. 14, 1990) (dismissing IIED claim because complaint alleging that plaintiff "was ostracized
and isolated[,] . . . that defendants engaged in a veritable campaign of harassment against her[,] .
. . [that she was] falsely accused of time abuse, improperly denied her vacation and personal
leave time and given unjustifiably poor evaluations . . . merely alleges insults, indignities,
annoyances and petty oppression which do  not constitute outrageous conduct); *Spence v.
Maryland Cas. Co.*, 995 F.2d 1147, 1148-54, 1158 (2d Cir. 1993) (dismissing IIED cause of
action because plaintiff's claims of "beratement, harassment, intimidation, criticism, denial of a
salary raise and threats of termination and demotion" were not sufficiently outrageous and
extreme to be actionable); *Walsh v. Nat'l Westminster Bancorp., Inc.*, 921 F. Supp. 168, 174
(S.D.N.Y. 1995) (IIED claim dismissed because plaintiff's allegations of being subjected to
devastating retaliatory actions, including "humiliating criticism and adverse performance
reviews" was not sufficiently extreme or outrageous).  Furthermore, "New York courts are
exceedingly wary of claims for intentional infliction of emotional distress in the employment
context because of their reluctance to allow plaintiffs to avoid the consequences of the
employment-at-will doctrine by bringing a wrongful discharge claim under a different name."
*Mariani v. Consol. Edison Co. of New York, Inc.*, 982 F. Supp. 267, 275 (S.D.N.Y. 1997) (citing,
*inter alia*, *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236) (discussing the very small number of

cases in which New York courts have sustained a claim of intentional infliction of emotional distress in an employment context); *see also Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 2001 U.S. Dist. LEXIS 1670, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001). In light of various courts' reluctance to interfere in personnel decisions, particularly in the public employment context, the same principle applies to the instant case where plaintiff alleges intentional infliction of emotional distress based upon Defendants' failure to hire him (as opposed to wrongful discharge). *See, e.g.*, *Wyllie v. Dist. Attorney of County of Kings*, 2 A.D.3d 714, 720, 770 N.Y.S.2d 110, 115 (N.Y. App. Div. 2d Dep't 2003) ("public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity") (citations omitted).

Reading the Complaint in the light most favorable to Plaintiff and construing all inferences in his favor, there is a complete absence of extreme and outrageous conduct which so transcends the bounds of decency. In light of the fact that Plaintiff cannot satisfy the first element of a claim for intentional infliction of emotional distress, the Court finds that Plaintiff has failed to plead such a cause of action. Accordingly, Plaintiff's third cause of action is dismissed.

### C.     Leave To Amend

In the opposition papers filed in response to Defendants' motions to dismiss, Plaintiff requests, in the event the Court finds the allegations set forth in the Complaint to be insufficiently pleaded, that Plaintiff be granted "leave to serve and file an amended complaint, if necessary." Pl.'s Mem. at 7. Generally, upon granting a motion to dismiss, courts allow leave to replead. *See Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (under Rule 15(a), leave to amend a complaint should be "freely given when justice so requires"). A court may, however, a

dismiss without leave to amend when amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) ("a district court may properly deny leave when amendment would be futile.").

Having carefully considered the Complaint, Defendants' motions to dismiss, and Plaintiff's opposition to the motions, the Court concludes that, in light of the grounds upon which the Complaint is dismissed, granting leave to replead would be futile. Regarding Plaintiff's Fifth Amendment claims, there are no circumstances under which Plaintiff could bring a Fifth Amendment claim against any of the named Defendants, or any other School District employee, because they are not federal actors. Plaintiff cannot show a violation of his due process rights under the Fourteenth Amendment because he has no protectable property interest in the security aide positions for which he applied. Similarly, Plaintiff cannot establish a violation of his substantive due process rights under the Fourteenth Amendment because there was no protected liberty interest at stake here and, in any event, there has been no alteration of his current employment status. In connection with his Equal Protection claim, Plaintiff's own statements in the Complaint and at the 50-h hearing demonstrate that the School District had a legitimate government interest in contacting the Civil Service Commission as alleged. Regarding Plaintiff's First Amendment retaliation claim, Plaintiff's speech does not constitute "protected speech" and thus cannot form the basis of a claim for violation of free speech rights. Finally, the conduct at issue here does not, as a matter of law, rise to the level of "extreme and outrageous conduct" so as to support a claim for intentional infliction of emotional distress.

Under the circumstances presented here, the Court does not see how the Complaint alleges facts sufficient to establish a "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Further, having grappled with the grounds for amending a pleading, the Court is unable to find any method of amendment which would cure the pleading defects identified here. Because this Court finds that repleading would be futile, Plaintiff's request for leave to file an amended complaint is DENIED.

## VI. DOCUMENTS SUBMITTED FOR *IN CAMERA* REVEIW

Earlier in this case, a discovery dispute arose in connection with the Defendant School District's reluctance to produce Defendant Rufus's personnel file. After hearing from the parties on this issue, I directed the School District to provide the Court with a copy of Rufus's personnel file for an *in camera* inspection. *See* DE 30. The Civil Conference Minute Order summarizing this conference stated that "[i]f the Court finds, after completing the inspection, that there are materials in the personnel file relevant and responsive to Plaintiff's refined discovery demand, the Court will direct the School District to turn over such documents, subject to the parties entering into and executing a Stipulation and Order of Confidentiality which will be 'so ordered' by the Court." *See id.* In light of the Court's decision here granting Defendants' motions to dismiss, the issues with regard to production of the personnel file are now moot. In any event, the Court has separately reviewed the documents in connection with Plaintiff's discovery motion and has found no information that would change the Court's decision here. Accordingly, the Court will return the documents to counsel for the School District via first class mail.

**V.**    **C**ONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in their entirety. Plaintiff's Complaint is dismissed and the Clerk of the Court is respectfully requested to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
      September 30, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge
